**Robert T. FINN**

v.

**The UNITED STATES.**

**No. 396–69.**

United States Court of Claims.

July 15, 1970.

Robert T. Finn, pro se.

James L. Heizmann, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DURFEE, Judge.

Plaintiff, while a Special Agent of the Federal Bureau of Investigation (FBI), signed an agreement wherein he agreed, in consideration of the FBI's reimbursement of moving expenses incident to a transfer of duty station, to remain in the service of the FBI for twelve months following the transfer. Approximately seven months after the transfer, plaintiff left the FBI, and by direct transfer, and without any gap in Government service, entered employment with the Internal Revenue Service (IRS). To recoup the reimbursement, the FBI has withheld

money otherwise due plaintiff. Plaintiff sues to recover the amounts withheld; defendant counterclaims for the amount of the reimbursement still unrecouped.

The statutes directly involved are 5 U.S.C. (§§ 5721(4) and 5724(i) (Supp. V, 1965–1969). 5 U.S.C. § 5721 provides in pertinent part:

> For the purpose of this subchapter—
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (4) "Government" means the Government of the United States and the government of the District of Columbia;
>
> &ast; &ast; &ast;
>
> &ast; &ast; &ast; &ast; &ast; &ast;

5 U.S.C. § 5724(i) reads as follows: [1]

> (i) An agency may pay travel and transportation expenses (including storage of household goods and personal effects) and other relocation allowances under this section and sections 5724a and 5726(c) of this title when an employee is transferred within the continental United States only after the employee agrees in writing to remain in the Government service for 12 months after his transfer, unless separated for reasons beyond his control that are acceptable to the agency concerned. If the employee violates the agreement, the money spent by the

United States for the expenses and allowances is recoverable from the employee as a debt due the United States.

The regulation involved was issued by the Bureau of the Budget on October 12, 1966, Circular No. A–56 Revised.[2] The question is whether the FBI as "an agency" under § 5724(i) may require plaintiff upon his transfer from his FBI employment in Dallas, Texas to St. Louis, Missouri, to agree in writing to remain in the service *of the agency* for twelve months after the transfer, as a condition of payment to plaintiff of his travel, transportation, and other relocation expenses authorized under the statute.

By letter dated March 1, 1967, the FBI offered plaintiff an appointment as Special Agent, GS–10. The letter advised that:

> &ast; &ast; &ast; In accepting this appointment, you will be expected to remain on duty for a minimum period of three years &ast; &ast; &ast;.

> It is understood that you are to proceed on orders to any part of the United States or its possessions where the exigencies of the service may require and it should be clearly understood that you will continue to be com-

---

1. 5 U.S.C. § 5724(i) was enacted as part of P.L. 89—516 (80 Stat. 323, July 21, 1966).

2. "REGULATIONS GOVERNING PAYMENT OF TRAVEL, TRANSPORTATION AND OTHER RELATED EXPENSES OF CIVILIAN OFFICERS AND EMPLOYEES OF THE UNITED STATES

   "Section 1. GENERAL
   &ast; &ast; &ast; &ast; &ast;
   "1.3 *Conditions and limitations regarding payment allowances.*

   &ast; &ast; &ast; &ast; &ast;

   "c. *Agreement requirement and liability.*
   "(1) *Transfers within continental United States and appointments and assignments of new appointees and student trainees to certain positions within the 50 States and the District of Columbia.* In connection with the transfer of employees between official stations within the continental United States, expenses for travel, trans-

portation, moving and/or storage of household goods and personal effects, and allowances as provided in these regulations shall not be allowed unless and until the employee selected for such transfer shall agree in writing to remain in the service of the Government for twelve months following the effective date of transfer, unless separated for reasons beyond his control and acceptable to the department concerned. In case of violation of such agreement, any moneys expended by the United States for such travel, transportation, and allowances will be recoverable from the individual concerned as a debt due the United States. Such an agreement also is required from certain new appointees and student trainees appointed or assigned to positions in the 50 States and the District of Columbia (see section 5). A signed agreement for twelve months shall be required in connection with each permanent change of station."
&ast; &ast; &ast; &ast; &ast;

pletely available for any assignment whenever and wherever the needs of the service demand. Further, you cannot expect an assignment to an office of your own preference. You should, therefore, so arrange your personal matters before taking oath of office that you will be able to accept any assignment wherever the exigencies of the service may require.

On March 4, 1967, plaintiff signed a letter of acceptance of appointment, in which he agreed without reservation of any kind to be governed by certain conditions, including:

3. That I shall remain on duty for a minimum period of three years, contingent upon a satisfactory work record.

\* \* \* \* \* \*

5. That I may be sent to any part of the continental or territorial United States that the exigencies of the Bureau's work may require, that my headquarters may be fixed in some jurisdiction other than that in which I have heretofore resided; that my headquarters may be changed as the work of the Bureau may require and that no transfer will be made from one station to another for personal reasons.

\* \* \* \* \* \*

Plaintiff entered on duty as a Special Agent of the FBI in Washington, D. C., on July 10, 1967, and entered a fourteen-week training course. At the completion of his training, plaintiff was transferred to the FBI office in Dallas, Texas. Plaintiff reported for duty in Dallas on October 18, 1967.

In connection with his transfer to Dallas, plaintiff signed the following agreement:

In connection with my transfer from Washington, D. C., to Dallas, Texas, I agree to remain with the service of the FBI for twelve months following the effective date of this transfer. It is understood that should I violate this agreement for personal reasons within

my control, I become obligated to refund to the Government all costs incurred in my behalf for travel, transportation, and related expenses as described in the Government Travel Regulations.

For many years, the FBI has had a policy of rotating new Special Agents from their first to their second offices of assignment after six to eighteen months of service in their first office. The purpose of these transfers is to give the new agents added training and experience by having them work in field offices of different sizes and in different parts of the country. This policy pre-dates the passage of Pub.L. 89–516 (now partly codified in 5 U.S.C. § 5724 (i)). In practice the length of time between such transfers is flexible, and has ranged roughly from six months to two years, depending on the manpower needs of the field offices. Currently, the time period between such transfers has been averaging one year.

On September 18, 1968, plaintiff was notified that his headquarters were changed for official reasons to St. Louis, Missouri, "effective upon your arrival there on or after this date."

On the same day, plaintiff signed the following agreement:

In connection with my transfer from Dallas, Texas, to St. Louis, Mo., I agree to remain with the service of the FBI for 12 months following the effective date of this transfer. It is understood that should I violate this agreement for personal reasons within my control, I become obligated to refund to the Government all costs incurred on my behalf for travel, transportation, and related expenses as described in the Government Travel Regulations.

Upon receiving his transfer orders to St. Louis dated September 18, 1968, plaintiff could have submitted his resignation to be effective on or after October 19, 1968, thereby satisfying his transfer agreement in connection with his assignment to Dallas. The FBI would have accepted plaintiff's resignation effective on

or after October 19, 1968, and would have cancelled the transfer to St. Louis.

Just prior to effecting his transfer to St. Louis, plaintiff initialed a Report of Performance Rating covering the period from April 1, 1968 to October 17, 1968. The Performance Rating contained the following remarks:

> There are no limitations, physical or otherwise, on the availability of S[pecial] A[gent]··Finn.·· He appears to be in excellent health and exhibits an abundance of energy and stamina in his daily duties.

Plaintiff reported for duty in St. Louis on October 18, 1968. He was reimbursed $2,097.79 for the expenses involved in this transfer.

By letter dated May 2, 1969, plaintiff tendered his resignation from the FBI, effective May 16, 1969. The letter advised that he was leaving the FBI to accept a position as an attorney with the Estate Tax Division of the Internal Revenue Service. By letter dated May 7, plaintiff requested that his resignation be made effective that date. Plaintiff's resignation was accepted by the FBI, by letter dated May 13, 1969.

Plaintiff commenced employment with the IRS in St. Louis on May 8, 1969, and has remained in the service of the IRS up to the present time.

At the time of plaintiff's resignation from the FBI, there was due him $444.97 in unpaid salary and $39.00 in unapplied bond balance. This money has been applied by the FBI against the debt arising from plaintiff's alleged breach of the transfer agreement on the transfer from Dallas to St. Louis. Subsequently, an agreement was entered into between plaintiff, the FBI, and the IRS, whereby $20.00 is deducted each pay period from plaintiff's salary at IRS, and applied against plaintiff's alleged debt, until plaintiff's rights. can be judicially determined.

█ If officials of the Government make a contract they are not authorized to make, the other party is not bound by estoppel or acquiescence or even failing to protest. Chris Berg, Inc. v. United States, 426 F.2d 314, 192 Ct.Cl. —— (1970).

Defendant argues that the FBI was authorized by the statute, § 5724(i), *supra*, to require the "Agency Service" Agreements, citing Arizona v. California, 373 U.S. 546, 580, 83 S.Ct. 1468, 10 L.Ed. 2d 542 (1963):

> * * * The general authority to make contracts normally includes the power to choose with whom and upon what terms the contracts will be made. When Congress in an Act grants authority to contract, that authority is no less than the general authority, *unless Congress has placed some limit on it.* * * * [Emphasis supplied.]

However, the statute upon which the Government relies, explicitly limits the contractual obligation of the employee "to remain *in the Government service* for twelve months after his transfer * *." There is no provision in the statute to delegate discriminatory implementation or administration by an agency. The statute is clear and unambiguous on its face; however, we note from its legislative history that the requirement for remaining in Federal service was submitted in a report by the Bureau of the Budget which reads in part as follows:

> In order to assure that the moving expenses are not paid to employees who do not intend to continue working *for the Government* after they have been moved, the bill provides that employees must agree in writing to remain *in Government service* for at least 1 year after they have moved, unless separated for reasons beyond their control and acceptable to the agency concerned. * * * [Emphasis supplied.] H.Rep. No.1199, 89th Cong., 1st Sess. (1965), p. 19.

The statutory provisions to protect career employees in civil service in the event of transfer from one agency to another as to classification and seniority are generally designed to offer this protection throughout the entire range of Government service, unless restricted to agency service by express language.

Without the authority of § 5724 (i), the FBI had no authority to pay travel and transportation expenses of transferred employees, or to even require, as a condition of such payment, that the employee agree in writing to remain in "Government service" for twelve months after his transfer.

Section 5721(4), for the purpose of the subchapter and of § 5724(i) defines "Government" to mean the Government of the United States; a *fortiori*, to remain in "Government service" requires only that the employee remain in the service of the Government of the United States for twelve months after his transfer. This is the limit of the contractual authority granted an agency under the statute, and the agency cannot by contract further limit a transferred employee to "agency service" as contrasted to "Government service." Within the purview and intent of this statute, Congress clearly did not intend that "Government service" was to be regarded as synonymous with "agency service."

Defendant has withheld $444.97 in unpaid salary and $39.00 in unapplied bond balance. This money has been applied by defendant on its claim for the $2,097.79 paid to plaintiff for his travel and transportation expenses incurred in the transfer from Dallas to St. Louis and further moneys have been applied on this claim by the deduction of $20.00 each pay period from plaintiff's salary at the Internal Revenue Service.

We interpret the agreement incident to plaintiff's transfer from Dallas to St. Louis to require only what the statute requires, i. e., that plaintiff remain in "Government service" for twelve months following the effective date of the transfer. Plaintiff has performed this obligation by continuing in Government service with the IRS following his resignation with the FBI, and is entitled to recover all moneys withheld by defendant, as hereinabove stated. The agreement by plaintiff for defendant to withhold $20.00 for each pay period provides that it is to continue until plaintiff's rights can be judicially determined, and accordingly is now terminated.

Accordingly, plaintiff's motion for summary judgment is granted, and defendant's cross-motion for summary judgment is denied. Judgment is entered for plaintiff with the amount to be determined pursuant to Rule 131(c).